Zach *v.* Schulman.

4-8484                                          210 S. W. 2d 124

Opinion delivered March 22, 1948.

Rehearing denied April 26, 1948.

*Wootton, Land & Matthews,* for appellant.

*Scott Wood, Leland F. Leatherman* and *James W. Chesnutt,* for appellee.

McHANEY, Justice. Appellee I. Schulman and Clara Zach, on November 17, 1926, entered into a partnership agreement for the purpose of acquiring certain real and personal property then known as the Algoma Hotel in Hot Springs, Arkansas, and thereafter to operate said hotel as the Balfour Hotel. On the same date, they purchased said property from the then owner, one Lola H. Phelps, who executed a deed to them in their individual names. The purchase price was $34,000, of which $4,000 was paid in cash, each partner contributing $2,000, and for the remainder notes secured by mortgages were executed by them, all of which has been paid from partnership funds realized from the operation of said hotel.

On April 26, 1946, Clara Zach, one of the partners, died intestate and without issue never having been married, and appellants, who are her brother and sister, were appointed administrators of her estate by the Garland Probate Court. There were other collateral heirs of Clara Zach in Poland, but whether living or dead has not yet been determined.

After appellants were appointed administrators of said estate they entered into an agreement with appellee for continuation of the partnership business and secured orders from time to time from the Probate Court authorizing them to continue the operation of said partnership business with appellee. Under said agreement appellants were employed to work in the hotel along with appellee, each of the three to receive a salary of $60 per week, and all checks on the partnership bank account had to be signed by appellant, Samuel Zach, and appellee, and the profits of the business were to be divided equally between appellants and appellee, just as formerly between appellee and Clara Zach.

The partnership business was continued in this way until April 21, 1947, when apellee brought this action against appellants and certain other named heirs of Clara

Zach and her unknown heirs, in which he alleged some of the facts aforesaid and that the debts of the partnership had been paid, and that the accounts between him and his deceased partner had been settled and paid; that he desired to continue the business under the same name and for that purpose to possess the partnership property, and offered to secure appellants as representatives of his deceased partner by bond to be approved by the court, or to see that they were paid the value of such partner's interest, so that he might continue said business as provided by law. He prayed an order of court fixing and determining the value of deceased's interest in the partnership property, and that he, as surviving partner, be authorized to continue the partnership business upon payment of the value of her interest to her legal representatives, appellants, and, upon such payment, the title to all the property described in the complaint be vested in him in fee simple.

The answer of appellants admitted the entry into partnership as alleged, on the date alleged, for the purpose alleged ''and that as such partners they purchased the real estate described in the complaint,'' the operation of the Balfour Hotel on the real estate so described, ''and that all of the property described in the complaint, together with all personal property, furniture fixtures and furnishings located therein and apurtenant thereto, were owned by and belonged to said partnership.'' They admitted the death of Clara Zach and that they are the administrators of her estate, and denied other allegations.

By way of cross-complaint they alleged that they had an oral agreement with appellee to continue the partnership business temporarily, under the orders of the probate court, until the heirs of Clara Zach could be determined and it could be determined whether such business could be carried on or disposed of without liquidation, and that the heirs of Clara Zach had not been determined; that appellee had breached said oral agreement for continuation of such business by filing his complaint and had failed and refused to state an account between them and to liquidate said business and to pay

over to them their intestate's one-half interest in the proceeds of the liquidated partnership; that appellee should be required to give an accounting of capital contributed and of profits and losses of the partnership to the time of its liquidation; and that it should be liquidated and sold at public sale by orders of court, and the interest of their intestate in the proceeds be turned over to them.

Appellants further alleged that they as individuals in their own right were tenants in common with appellee and the other heirs of Clara Zach in the ownership of the real estate, that an equitable division thereof could not be agreed upon, that said real estate was not susceptible of division in kind, and that it should be sold and the proceeds divided among the parties as their respective interests may appear.

Trial resulted in a decree for appellee in accordance with the prayer of his complaint, in that the court held, "that the continuation of said business by agreement of the surviving partner and the representatives of the deceased partner by operation of law constituted a sale and assignment of the partnership assets to the surviving partner; that the representatives of the deceased partner are entitled to receive as ordinary creditors in payment of the interest of the deceased partner in said dissolved partnership an amount equal to the value of the said deceased partner's interest at the time of her death; and the court finds the value of said interest as follows:".

There is here a direct appeal and a cross appeal. In view of the disposition we make of the case on direct appeal, it becomes unnecessary to consider or determine the cross appeal.

The main or principal question for determination is the correctness of the trial court's holding, above quoted, that, by operation of law, the continuation of the partnership business by the surviving partner by agreement with the legal representatives of the deceased partner, "constituted a sale and assignment of the partnership assets to the surviving partner." This holding is based on the court's construction of §§ 41 and 42 of the Uniform Partnership Act, enacted in this State as Act No. 263 of

1941, p. 642, hereinafter referred to as U. P. A., or as said Act.

Another question is whether the U. P. A. applies to partnerships which were entered into prior to the passage of said Act, and had acquired real estate prior to its adoption. We dispose of this question first.

An examination of the reported cases reveals no case that holds that said Act does not apply, and counsel have cited no case that so holds. We have found no case where the question was raised. A number of cases concerned partnerships existing before said Act was adopted in the states of such decisions, and the U. P. A. was held applicable without question. Some such cases are *Crossman* v. *Gibney*, 164 Wis. 395, 160 N. W. 395; *Froess* v. *Froess*, 284 Pa. 369, 131 Alt. 276; and same case, 137 Atl. (Pa.) 124. Our own case of *Terrall* v. *Terrall, admx.*, 212 Ark. 221, 205 S. W. 2d 198, is cited to support the contention that the U. P. A. does not apply to partnership real estate. This case does not so hold, but only that it does not apply to the real estate conveyances there in question, because they were made and rights therein vested long before the U. P. A. was enacted in this State. Moreover, under the plain provisions of said Act a partner ceases to be a tenant in common in partnership property, if he ever was under prior law, and becomes a "tenant in partnership," under § 25 of said Act. This section defines the "Nature of a Partner's Right in Specific Property. (1) A partner is a co-owner with his partners of specific partnership property holding as a tenant in partnership," and the incidents of this tenancy are set out in subsection (2)(a), to (e) inclusive. Section 26 provides: "A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property." So, it appears to us, that real estate owned by a partnership and used for partnership purposes is converted into personal property, so far as the partners are concerned.

We do agree with appellants, however, that the learned trial court erred in the holding set out above as the main or principal question presented for our de-

termination. We do not so construe the relevant sections of said Act.

Section 41 of said Act prescribes the liability of persons continuing the business of the partnership in certain cases, and relates exclusively to the rights of creditors of the partnership and is divided into 10 subsections. Subsection (3) of said § 41 is the only one with any possible relevancy here and it provides: "When any partner retires or dies and the business of dissolved partnership is continued as set forth in paragraphs (1) and (2) of this section, with the consent of the retired partners or the representative of the deceased partner, but without any assignment of his right in partnership property, rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business shall be as if such assignment had been made." It will be seen that this provision has nothing to do with the question under consideration, but has to do only with the "rights of creditors of the dissolved partnership and of the creditors of the person or partnership continuing the business." As to such creditors, consent of appellants here would subject the interest of their intestate to liability the same as if they had assigned such interest. In other words, an assignment would take place by operation of law for the benefit of existing creditors at the date of dissolution and subsequent creditors. There are no creditors here. The partnership debts existing at the death of intestate, if any, have been paid and there are no subsequent creditors, so § 41 can have no application here.

Section 42 of said Act, in our opinion, does not give the court authority to make the order above quoted. It defines the rights of a retiring partner or the estate of a deceased partner when the partnership business is continued under the conditions set out in § 41 (3) above quoted, that is, in this case, with the consent of appellants as representatives of the estate of Clara Zach. It provides: "When any partner retires or dies, and the business is continued under any of the conditions set forth in § 41 (1, 2, 3, 5, 6), or § 38(2b) without any settlement of accounts as between him or his estate and the

person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; provided that the creditors of the dissolved partnership as against the separate creditors, or the representative of the retired or deceased partner, shall have priority on any claim arising under this section, as provided by section 41 (8) of this act." We do not think this section gives the surviving partner any additional rights. It relates wholly to the rights of a retired partner or the representatives of a deceased partner, and is permissive as to such rights and not mandatory. They "may have the value of his interest at the date of dissolution ascertained," and, if he so determines, he "shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest," or, at his or their option, shall receive "in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership."

As said by the Pennsylvania Court in *Froess* v. *Froess*, 284 Pa. 369, 131 Atl. 276, construing said § 42, "The plain duty of the surviving partner is to collect the assets of the partnership, receive and receipt for payment, pay and settle partnership debts, settle and wind up the partnership business and distribute the net surplus among the parties entitled to it. The amount found due has preference to any individual creditor of the survivor and it is to be distributed in the manner designated by the Partnership Act, § 40.

"The legal rule is fixed on this subject. If the survivors of a partnership carry on the concern, and enter into new transactions with the partnership funds, they do so at their peril, and the representative of the deceased partner may elect to call on them for the capital with a share of the profits or with interest. If no profits

are made, or even if a loss is incurred, they must be charged with interest on the funds they use and the whole loss will be theirs. . . .'' In that case there was no agreement between the surviving partner and the representative of the deceased partner to continue the business after the death of one of the partners.

We have been cited to no case that holds that continuing the business of the partnership by consent or agreement after death of a partner gives the surviving partner under § 42 the right claimed here. It would serve no useful purpose to review the cases cited and would greatly extend this opinion.

The decree will be reversed and the cause remanded with directions to require appellee to liquidate the assets of the dissolved partnership by order of court at public sale, or private sale, if the parties so agree, or to appoint a commissioner for this purpose, notice of such sale to be given as provided by law. Costs will be paid by appellee.

## On Rehearing.

McHANEY, Justice. Appellee insists we were in error in stating in the original opinion that: ''In view of the disposition we make of the case on direct appeal, it becomes unnecessary to consider or determine the cross-appeal.'' He is correct as to points 1 and 2 of the cross-appeal, that is, the decision made on the main question in the case did not settle these two points of the cross-appeal.

1. In the decree the court rendered judgment for appellants and against appellee for $2,535.52 ''which was the balance due the deceased partner, Clara Zach, upon her drawing account in said partnership,'' and this is item 1 of the cross-appeal. After the death of Clara Zach, Irving Zach, son of one of the appellants, and a public accountant in Brooklyn, New York, examined the partnership books of account at his disposal to arrive at the drawings of each of the partners. He found that appellee

130

had drawn $13,039.48 more than Clara Zach. This amount was paid by appellee to appellants by a check drawn on the Balfour Hotel or partnership account. Later Irving Zach examined the books further and found additional drawings by appellee over and above those of Clara Zach in the sum of $2,535.52. He testified how that sum was overlooked, and his explanation thereof appeared to the trial court to be reasonable, as it does to us. Appellee did not deny the correctness of the witness's testimony, but admitted that if the books showed he owed it, he was willing to have it entered as a charge against his account. Appellee relies on the plea of an account stated, but that plea is not available against either fraud, mistake or duress. *Coffman* v. *Kirby*, 200 Ark. 998, 142 S. W. 2d 224.

2. Appellee also contends that the court erred in refusing to allow him more than $60 per week as salary and fee for "liquidating the dissolved partnership." Up to the time of this lawsuit appellee was not liquidating the partnership, but was continuing it. His agreement with appellants was that each of the three should receive $60 as salary. This was all he was entitled to.

The petition for rehearing is denied.