**MILLER et al. v. HOWELL et al.**

No. 15175.

Court of Civil Appeals of Texas.
Fort Worth.

Nov. 17, 1950.

Rehearing Denied Dec. 15, 1950.

926

---

Al M. Heck, Park Street, Nat L. Hardy and Carl Wright Johnson, all of San Antonio, for appellants.

Lasseter, Spruiell, Lowry, Potter & Lasater, of Tyler, for appellees.

McDONALD, Chief Justice.

The appeal is from an order overruling a plea of privilege. It will be more convenient to designate the parties as they were designated in the trial court. The plaintiffs were J. V. Howell, a resident of Dallas County, and R. D. Howell, a resident of Bexar County. The defendants were Mary Green Miller, sued individually and as independent executrix of the will and estate of G. C. Howell, deceased, and her husband, Dr. Robert Miller, both residents of Bexar County, and Gordon Howell, a resident of Cameron County. The suit was filed in Wood County, and the defendants Mary Green Miller and her husband filed their plea of privilege to be sued in the county of their residence.

The plaintiffs seek to maintain venue in Wood County under Subdivision 14 of Article 1995, R.C.S., on the ground, to quote from their controverting affidavit, "that plaintiffs sue for the title and possession of a one-half interest in the lands described," and that "said lands are located partially in Wood County," and under Sub-

division 13 on the ground, again to quote from their controverting affidavit, "that plaintiffs sue for a partition of the assets of a partnership hereinbefore existing between plaintiffs and G. C. Howell, deceased * * * a portion of the assets of said partnership consists of lands in part located in Wood County." They further seek to maintain venue in Wood County on the ground that they have an implied lien on the assets of the partnership, a part of which consists of land in Wood County, to secure payment of debts which the deceased G. C. Howell owed to the partnership and to plaintiffs. Article 1995, Sub. 12.

We must determine, therefore, whether the nature of plaintiffs' suit is such as to bring it within the provisions of Subdivisions 12, 13 and 14, or either of them. Under rules long established, the nature of plaintiffs' suit must be determined from their pleadings.

The first four numbered paragraphs of the petition contain counts generally in the nature of a suit in trespass to try title, the first numbered paragraph alleging that on January 1, 1950, the plaintiff J. V. Howell was the owner of a one-fourth interest and that the plaintiff R. D. Howell was the owner of a one-fourth interest, in fee simple, in the lands described in three exhibits attached to the petition. The petition seeks an accounting for oil, gas and other minerals produced from the lands. The concluding sentence of what might be termed the trespass to try title count reads as follows: "Plaintiff sues not only to establish their title to their said interests but also for a partition and division of the said properties as assets of the partnership hereinafter pleaded."

Paragraphs numbered five to fifteen, beginning with the declaration, "Specially pleading their title plaintiffs show that on or about August, 1938, plaintiffs associated themselves with G. C. Howell to form a partnership for the purpose of acquiring oil, gas, royalty, mineral and other real property interests," allege in detail the formation by parol of a partnership agreement, under the terms of which plaintiffs and G. C. Howell were to be active in obtaining information concerning various oil

plays in the states of Texas, Oklahoma, Arkansas, Illinois, and elsewhere, and were to attempt to negotiate trades for the purchase of such interests. Any interests which the parties mutually desired to purchase for the partnership were to be paid for with funds advanced by G. C. Howell or out of the partnership income, and G. C. Howell was to be entitled to reimbursement for such advances out of the partnership assets, and the other partners were likewise to be entitled to reimbursement for any advances made by them. The interest of G. C. Howell was to be one-half, that of plaintiffs one-fourth each. About 1941 various producing oil properties were acquired by the partnership. Proceeds of sales of oil and gas were paid to G. C. Howell, the amounts being sufficient to reimburse G. C. Howell fully for all advances made by him. To quote from the petition, "The parties continued to do business under the same agreement with additional purchases, after that time, being made and paid for out of the proceeds from sale of oil and gas from partnership assets." While so engaged in said enterprise and the prosecution thereof the parties acquired the properties described in the exhibits attached to the petition. "Title to said interests was taken in the name of G. C. Howell but for the use and benefit of the partnership according to the said agreement." Other allegations are to the effect that some of the interests have been sold, and that full information with respect to the properties is contained in books and records in the possession of the defendant Mary Green Miller, and she is called on to produce such records. Again quoting, "As to properties located in the State of Texas, plaintiffs sue for judgment awarding them title and possession of their respective therein (sic). As to properties described in said exhibits located outside the State of Texas, plaintiffs ask that a mandatory injunction be issued by this Court requiring Mary Green Miller, Executrix as aforesaid, to convey to them their respective interests in said properties." Alleging that G. C. Howell had received large sums of money from the partnership property, the petition declares that Mary Green Miller, as executrix, should be required to

make a full, fair and complete accounting of all the partnership property, income, expenses and transactions. The Court is asked to appoint an auditor, under Rule 172, Texas Rules of Civil Procedure, with authority to examine into the partnership accounts and records and to report back to the Court the results of his findings. The substance of the prayer of the petition is:

(1) That defendants be cited.

(2) That Mary Green Miller, as executrix, be required to account to plaintiffs for all partnership assets and income which have come into her hands.

(3) That an auditor be appointed to examine into said accounts and to report his findings to the Court.

(4) That judgment be entered awarding to plaintiffs the title and possession of "their partnership interest in the real property located in the State of Texas;" and that Mrs. Miller be required to convey to plaintiffs "their respective interests in the partnership located outside of the State of Texas."

(5) That the partnership properties be divided and partitioned between the parties.

(6) That plaintiffs have judgment against Mrs. Miller for such sums as an accounting and audit might show "is due and owing to them in connection with the partnership estate."

(7) For such other relief as plaintiffs may be entitled to receive.

Attached to the petition are exhibits in which are described numerous items of real property, for the most part oil and mineral interests, located in various counties in Texas and in several other states.

As is said above, the petition is incorporated by reference in the controverting affidavit.

The first contention made by defendants, appellants here, is that the suit, on its face, is not one for recovery of an interest in land, but for the recovery of profits arising from the use and sale of land. Our summary of the allegations of the petition shows that the allegations of the petition are to the effect that the lands themselves,

and not merely the profit arising from them, are owned by the partnership. It is alleged that some of the properties were purchased with partnership income, and it is alleged that all of the properties were acquired by the partnership.

We shall discuss together the questions whether or not venue lies in Wood County under Subdivision 14 of Art. 1995, as being a suit to recover land, or under Subdivision 13, as being a suit to partition land, or under Subdivision 12, as being a suit to foreclose a lien on land. The three subdivisions provide, respectively, that (14) suits for the recovery of land or damages thereto, or to remove incumbrances upon the title to land, or to quiet the title to land, or to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may lie, and (13) that suits for the partition of land or other property, and (12) that suits for the foreclosure of a mortgage, or other lien on property, may be brought in the county in which such land or property is situated.

■ It is stated in 56 Am.Jur., Venue # 11, p. 13, that "Venue statutes providing that suits for the possession or recovery of real estate, or for the determination of title, rights, and interests in real estate are to be brought in the county where the real estate or some part thereof is situated are more or less declaratory of common-law rules, and the common-law tests of local action are usually applied." It has been held in Texas that an action to recover land, within the meaning of our venue statute, has a well-known and definite meaning, and means an action in ejectment, trespass to try title, or suit to recover the land itself. Pena v. Sling, 135 Tex. 200, 140 S.W.2d 441, 128 A.L.R. 1223. For example, it does not include an action for specific performance of a contract to convey land. Hearst's Heirs v. Kuykendall's Heirs, 16 Tex. 327. "Recovery of land" has reference to possession. Miller v. Rusk, 17 Tex. 170.

■■ "The venue of an action is ordinarily determined by the nature of the principal right asserted and the relief sought. That is to say, it is the facts of the transaction that decide the venue, not the name

given it nor the form in which the plaintiff has cast his petition." 43 Tex.Jur., Venue, # 4, p. 707.

■■ Plaintiffs say that their suit is one to recover land, and to partition land, and to foreclose a lien on land, a part of which land lies in Wood County. Their pleadings may contain conclusions to such effect, if the conclusions are read without regard to the remaining allegations in the pleadings, but when the pleadings are examined in their entirety, and when it is endeavored to find out what principal right or rights are asserted and what relief is sought, it is seen that the suit falls within a well-defined category. It is, by all standards, an equitable proceeding for a partnership accounting. It is a transitory action, rather than a local one, it is primarily a proceeding in personam, rather than a proceeding in rem.

■ Some familiar and settled principles of partnership law will be stated. In 40 Am.Jur., Partnership, # 90, p. 191, it is said that much confusion will be avoided in the discussion of partnership real estate by recognizing the dual set of theories in regard to such property, as advanced by the courts of law and of equity respectively. Although the formal distinctions between courts of law and of equity have been largely broken down in some jurisdictions, as in Texas, it still remains important to determine whether a particular issue under consideration is one that could have been raised in an action at common law or is one involved only in a chancery action. A careful distinction must be drawn between the legal title and the equitable title. Wherever the legal title to partnership realty may rest, the equitable title is in the partnership. Under the doctrine of equitable conversion, the real estate may be treated as personalty so far as may be necessary for the payment of the debts of the partnership and the adjustment of equities between the partners. Such conversion of real estate into personalty is a device of equity to effectuate the settlement of partnerships, and to devote all of their property to payment of firm debts. Id., # 110. However, when the land is no longer needed for partnership purposes, it is relieved of the trust

implied from the partnership relation, and all the ordinary incidents and qualities of real estate revive. Id., # 112. The joint effects of a partnership, including realty, belong to the firm, and not to the partners, and a partner has no individual property in any specific assets of the firm, and no right during the existence of the partnership to the exclusive possession of any of its property. The interest of each partner in the partnership property is his share in the surplus after the partnership debts are paid, and after partnership accounts are settled and the rights of the partners inter se are adjusted. Id., # 114.

In the absence of a partnership agreement which provides otherwise, the death of a partner dissolves the partnership by operation of law. Id., # 285. In spite of such dissolution, however, the community of interest subsists for some purposes long enough to enable the surviving partners to wind up and settle the affairs of the partnership. Id., # 286. The great weight of authority in the United States is to the effect the interest of the deceased partner in firm real estate descends as real estate to the heirs of the deceased, subject to the right of the surviving partners to have it treated as personalty for the purpose of paying partnership debts and adjusting the equities of the partners among themselves and the estate of the deceased. Id., # 291.

It is the duty, as well as the right, of the surviving partners, where a partner has died, to wind up the partnership affairs. Id., # 294. But there is nothing in the pleadings of the plaintiffs in the case before us to indicate that the plaintiffs bring the suit in the capacity of surviving partners winding up the affairs of the partnership, and in their brief filed in this court they expressly declare that they do not bring the suit in such capacity. If this were a suit brought by the surviving partners against the estate of the deceased partner merely for the purpose of having it adjudged that the Wood County real estate belongs to the partnership, and for accounting as to oil sold therefrom, it is our opinion that venue would lie in Wood County under Article 1995, Sub. 14. But the rights asserted and the relief sought in this suit are of far broader scope, and of a different nature.

When a partnership business is closed out, a cause of action for an accounting and settlement arises between the partners, under an implied contract mutually and equally to share the profits and bear the burdens of the partnership. The usual procedure for the adjustment of partnership accounts is by a bill in equity. Id., # 328. The settlement of the partnership affairs, including the division of the assets among the partners, has always been one of the functions of a court of equity. This is because a court of equity is able to investigate complicated accounts, because there may be a necessity for discovery in the settlement of accounts, and because of the relation of trust and confidence in one another which exists between partners. Frequently a bill in equity is the only available remedy by which the partnership affairs can be settled. Id., # 330.

The facts of the case on appeal present a striking example of the need of equitable remedies, and the inadequacy of the remedies available in an action at law, to settle the affairs of a partnership. The defendant, allegedly, is in possession of the books and records of the partnership. Discovery will be required to establish the facts which will serve as a basis for an accounting between the partners. Nothing is alleged with respect to debts of the partnership, but it is elemental that a suit for settlement and accounting will necessarily involve an inquiry as to partnership debts, and will result in an order for their payment out of partnership property. The properties alleged to belong to the partnership include a long list of lease and royalty interests in lands lying in other States. Obviously, only a court of equity, with its power to compel performance from the parties before it with respect to properties lying beyond the borders of Texas, can effectively wind up the affairs of the partnership and grant to the parties the relief to which they may be entitled. If the present suit be a local action, as distinguished from a transitory one, if it be an action in rem rather than an action in personam, it is at once

apparent that the Texas court has no jurisdiction to decide issues of title to land in other states.

The direct questions, whether an action for settlement and accounting of partnership affairs, including a division of the assets after payment of debts and adjustment of equities between the parties, is a local or a transitory action, and whether venue lies exclusively in the county where the partnership property or some of it lies, have come before the courts a number of times. In some of the cases, the question has arisen as one of venue, in others as one of jurisdiction.

In 47 Corpus Juris, Partnership, # 914, p. 1206, it is said: "The proper venue of an equity action for the dissolution and settlement of a partnership is generally determined by the residence of the parties, and not by the locality of the firm assets, even when these include real estate."

A comparatively early case was Godfrey v. White, 43 Mich. 171, 5 N.W. 243, 248. The defendant, sued in a county other than that in which the partnership lands were located, set up lack of jurisdiction. The following is taken from the opinion in the case: "Proceedings between partners for an accounting are always for the principal purpose of reaching a statement of money balances, and a division of assets as personalty. It may, no doubt, in some cases turn out that there is enough pure personalty to settle all balances without reference to such lands as are owned by the firm, so that if parties choose they may keep the lands separate. But this cannot usually be known until the accounts are taken; and unless the lands are kept out of the accounting altogether, originally by general consent, there must be some difficulty in treating them as distinct at any time. It would be contrary to all principle to hold a court capable of maintaining jurisdiction up to the last stage of a cause, and then incapable of completing its work over any part of the property in controversy. Partnership settlements cannot very well be made piecemeal. The court that deals with them must determine all of the equities. The proceeding is, in its essence, a personal and not a real controversy. It could hardly

be claimed that a partner could get an accounting in any state or region where lands were to be found, and proceed to a decree without personal service or appearance, and without a personal accounting. The decree, when it reaches lands, does it incidentally, and its chief purpose is different."

In Williams v. Williams, 83 Misc. 560, 145 N.Y.S. 564, a suit to dissolve a partnership and for accounting was filed in a court in New York, in which state the partners resided and the partnership had its principal office and place of business. The partnership operated a quarry in Vermont. Another suit respecting the same matter was filed in Vermont. The New York court declared that the action was an equitable one for the dissolution of the partnership, and that the venue was determined by the residence of the parties, and that it could compel the parties before it to obey its orders, even though the property was in another state.

In Myers v. Garland, 122 Okl. 71, 251 P. 34, a suit for dissolution and accounting was filed in the county where the land lay. It was held that venue lay in the county of the defendants' residence. The court noted that the suit was not an action by the partnership with respect to realty, but was from the face of the bill an action to declare a partnership, to secure an accounting, and to have the oil leases in question declared assets of the partnership. The court referred to the general rule which treats real estate as personalty for the purpose of determining what judgment shall be entered between the parties in such an action.

Repogle v. Neff, 176 Okl. 333, 55 P.2d 436, held to the same effect, saying also that if the allegation that certain real estate belongs to the partnership should be traversed, it would form an issue for trial by a court of equity, as an incident to the relief prayed for in the bill, and that the rights of the parties might be determined, though the real property does not lie in the county where the court sits.

It was held in Woolley v. Shaw, 192 Okl. 107, 136 P.2d 398, to quote from the syllabus: "A cause of action for establishment of a partnership or coadventure and adjustment of the rights of the parties is 'transi-

tory' and may be filed in any county wherein any of the partners may be served, even though partnership assets include real property located in other counties."

In Bagg v. Osborn, 169 Minn. 126, 210 N.W. 862, 864, the action was for dissolution and accounting of a partnership, the assets consisting of a farm in Canada, and personal property on the farm. The court said, in part: "It is suggested in the briefs that since the property is in Canada it is beyond the effective reach of the court. Perhaps so. But the court, through its jurisdiction and control of the parties, may control their acts in reference to the property."

In the opinion in Morris v. Nunn, 79 Tex. 125, 15 S.W. 220, it was said that the partnership in question had been dissolved, and that at the time of dissolution the partners had had an accounting together, and had made up and agreed upon a statement of their accounts, showing a balance in favor of the plaintiff. Plaintiff brought suit to partition partnership land, and to recover judgment upon an account stated. It was held that venue lay in the county where the land was located. We do not consider that this holding is in conflict with those above discussed. The distinction rests in the difference between a suit for dissolution and accounting, brought in a court of equity, and a suit at law for partition of partnership property, brought after there has been a settlement and accounting between the partners. See the discussion in 40 Am. Jur., Partnership, # 465 et seq., as to the distinctions between the two kinds of suits.

In Collins v. Naylor, Tex.Civ.App., 192 S.W.2d 332, the partnership property consisted of personal property. Plaintiff sought, among other things, to maintain venue in a named county on the ground that the suit was one to partition property, within the meaning of Subdivision 13 of Article 1995. This court overruled the contention, saying that the word "partition" in its broadest sense might mean many things, but that it was used in its legal sense in Subdivision 13.

In Hearn v. Frazier, Tex.Civ.App., 228 S.W.2d 582, writ dis., plaintiff sued to recover a one-half interest in certain oil well drilling machinery, and for $1800 alleged to be owing to him for labor. The court held that venue lay in the county where the property was located under Subdivision 10 of Article 1995. Among other things, the defendant contended that the plaintiff's petition showed on its face that plaintiff and defendant were partners, and that, under the law, a partner could not sue the other partner for an interest in partnership property, but that his remedy was for dissolution of the partnership and for accounting. According to our analysis of the holding of the court, it was that the contention just mentioned went to the merits of the case rather than to the question of venue. In other words, if plaintiff's suit for an interest in the property was prematurely brought, defendant's remedy was a plea in abatement, not a plea of privilege. The holding, as we construe it, is not that plaintiff had properly brought a suit for dissolution and accounting in the county where the property was located, but that his suit was one to recover an interest in the property, even though his petition may have shown facts which would abate the suit, and that, as a suit to recover property, it was properly brought in the county where the property was located.

When we look to all the allegations of plaintiffs' petition, and interpret them so as to make them as harmonious as possible, and look for the principal rights asserted and the relief sought, we have to construe it as a bill in equity, cast in the mold recognized by countless decisions, having for its purpose an adjudication of the creation of the partnership and its dissolution, and an accounting as to all of its affairs. Having brought such a suit, it is immaterial whether or not plaintiffs have alleged that there are debts owing by the partnership to persons other than the partners, or that any of the partners are indebted to the other partners or to the partnership. Inquiry will be made as to all such matters, the court will order partnership debts paid out of the partnership assets if there are any debts, the court will adjust the equities between the parties, and, having acquired jurisdiction of the matter, the

court will also determine any questions of title that may be necessary in the proper winding up of the partnership affairs, even to the point of compelling the parties to do whatever may be necessary to make proper disposition of properties outside of Texas. To say that this is a suit to try title to land in Wood County, and to have an accounting as an incident thereto, is to permit a minor incidence of the suit to control its venue over the principal rights asserted and the principal relief sought. For the same reasons, it cannot be called a partition suit, or a suit to foreclose a lien, within the meaning of the venue statutes. The suit is one of a kind which all the courts, except perhaps under unusual circumstances, have treated as a transitory action, one in personam and not in rem, and necessarily cognizable only in a court of equity, and not governed by the rules of venue which pertain to local actions, such as Subdivisions 12, 13 and 14 of Article 1995.

The judgment of the trial court is reversed, and the case is ordered transferred to Bexar County.