Layton A. HUMPHREY, Jr., et
al., Appellants,

v.

Bob BULLOCK, Comptroller of Public
Accounts of the State of Texas, et
al., Appellees.

No. 13793.

Court of Appeals of Texas,
Austin.

Jan. 25, 1984.

Rehearing Denied Feb. 29, 1984.

Claude R. Wilson, Jr., William S. Lee, Golden, Potts, Boeckman & Wilson, Dallas, for appellants.

Mark White, Atty. Gen., Maureen Bucek, Asst. Atty. Gen., Austin, for appellees.

Before PHILLIPS, C.J., and EARL W. SMITH and GAMMAGE, JJ.

PHILLIPS, Chief Judge.

Layton A. Humphrey, Jr. and John Roach, co-independent executors of the estate of Layton A. Humphrey, Sr., deceased, appeal the judgment of the trial court which denied a refund of estate taxes paid on behalf of the estate. Appellants contend that the Comptroller, in computing the Texas estate tax, improperly included within the Texas taxable estate the value of deceased's interest in a partnership, to the extent that such value represented out-of-state partnership real property.

We affirm the trial court's judgment.

Layton A. Humphrey, Sr. died on October 16, 1976; he owned at death an interest in the Joe A. Humphrey Company, a Texas general partnership formed in Texas by Texas residents. The roots of The Humphrey Company apparently extend to 1931 when Joe A. Humphrey, his brother Layton A. Humphrey, Sr. and their parents formed a partnership of identical name.

In 1947 Joe A. Humphrey, Layton A. Humphrey, Sr. and their three sisters executed an agreement which provided: that their parents had died; that the parties

"desire to enter into a partnership agreement so that they may continue the original partnership arrangement of 1931"; that the parties agree to become partners; that the partnership would commence on January 1, 1948 and end on December 31, 1967; that Joe A. Humphrey would be the managing partner; that the partnership assets would be owned by the partners in specified percentages (which percentages also reflected each partner's right to share in profits and to share in distribution of property upon termination of the partnership); that the purpose and business of the partnership would be that of a "general oil business, including but not limited to the buying and selling of leases, royalties, in to oil, gas, and other minerals, the drilling of wells and exploring for minerals of all kinds"; and that the parties' executors and administrators were bound to performance of the agreement.

In 1955 the parties executed an agreement whereby they revised their respective "partnership interests"; therein the brothers purported to "transfer, assign, and convey [to the sisters] as their separate property and estate, such undivided interests in the partnership and properties of whatever kind or character owned by the partnership necessary to effectuate the [revised percentage ownership]." Also, the 1947 agreement was ratified.

In 1967 the brothers, two of the sisters and the executor of the third sister (Pauline) executed an agreement which recited that Pauline had died that year, and which purported to amend the 1947 agreement in the following respects: that notwithstanding the death of Pauline, the "partnership thereby and hereby created shall continue ... in full force and effect from January 1, 1948 until December 31, 1969, or the death of J.A. Humphrey, whichever first occurs"; that the death of any party other than J.A. Humphrey would not effect dissolution or termination of the partnership; and that the partnership could be terminated by J.A. Humphrey, by the giving of thirty days notice. In 1969 the same parties extended the term of the partnership through "December 1, 1974, or the death of J.A. Humphrey, whichever first occurs."

At the time of Layton Humphrey's death (1976), the partnership owned real property (oil and gas leases) located in the states of Louisiana, Mississippi, Oklahoma and Wyoming. It is the value of this property which appellants contend was erroneously included in Layton Humphrey's taxable estate. Appellants introduced evidence which would indicate that the states where these real properties were located had imposed an inheritance tax upon such properties and that such taxes were paid by the estate.

I.

Both the State and appellant agree that for inheritance tax purposes the deceased's taxable estate consisted of the value of all of the following property, to the extent of decedent's interest therein at the date of death: (1) real property located in Texas, (2) tangible personal property with a situs in Texas, and (3) intangible personal property wherever located. See 34 Tex.Admin. Code § 3.214(a)(1) (1981). However, the parties disagree as to how the deceased's partnership interest should be characterized.

Appellants insist that under the Texas common law, the partnership interest of a partner was recognized as an interest in the partnership property, and was properly characterized in accordance with the nature of such property (here realty). They aver that the common law of Texas is here applicable to characterization of the partnership interest, since the partnership was formed and the property was acquired prior to the adoption of Tex.Rev.Civ.Stat.Ann. art. 6132b (Texas Uniform Partnership Act). The UPA was passed in 1961 and became effective January 1, 1962. Appellants point to Section 4(5) of the Act which provides that "[the] Act shall not be construed so as to impair the obligations of any contract existing when the Act goes into effect, nor to affect any action or proceedings begun or right accrued before this Act takes effect."

It should be stressed that the disputed real property was partnership property, as opposed to property owned separately by the partners and loaned to the partnership. The trial court found that the property in question was owned by the partnership; this finding is supported by the testimony of Joe A. Humphrey.

■ There is authority for the proposition that the issue as to whether an interest in a tangible thing is classified as real or personal property should be determined by the law of the state where the property is located. Restatement of Conflict of Laws § 208 (1934). However, where, as here, there was neither pleading nor proof concerning the law of the applicable state, nor was there any motion that the trial court take judicial notice of such state's law, it must be presumed that the law of such state is the same as that of Texas. *Gevinson v. Manhattan Construction Co. of Okl.*, 449 S.W.2d 458, 465 n. 2 (Tex.1969); *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex.1963); Tex.R.Civ.P. 184a (1976). Appellants and appellee both advance the law of Texas in their appellate briefs.

### A.

Appellants contend that the deceased owned an interest in a mining partnership. There is some authority to indicate that in such a partnership, which is a creature of the common law, the partners must be treated as owning the partnership assets as tenants in common, and thus that the assets of the partnership must be treated as their individual property. *See Munsey v. Mills & Garitty*, 115 Tex. 469, 283 S.W. 754 (1926, jdgmt adopted); *but see Miller v. Howell*, 234 S.W.2d 925 (Tex.Civ.App. 1950, no writ). We express no opinion as regards the nature of an ownership interest in a mining partnership since the trial court found upon sufficient evidence that the Humphrey Company was a general partnership at the time of decedent's death.

■ Appellants contend that it was proved as a matter of law that the instant partnership constituted a mining partnership. It is true that a mining partnership arises by operation of law where co-owners work a mine; the elements to be proved are joint ownership, joint operations, a sharing of profits, a community of interest and mutual agency representing the mining partnership in management and operation. *State v. Harrington*, 407 S.W.2d 467 (Tex. 1966). Comment, *Mining Partnerships*, 12 Baylor L.Rev. 103 (1960); Jones, *Mining Partnerships in Texas*, 12 Texas L.Rev. 410 (1934).

■ However, a general partnership may engage in a mining enterprise. *Thompson v. Crystal Springs Bank*, 21 F.2d 602 (8th Cir.1927); Rowley, Rowley on Partnership § 56.5 (2d ed. 1960); Summers, The Law of Oil and Gas (1962). The method by which a mining and general partnership are distinguished is not clear. We think that such turns on the intent of the partners.

■ It has been held that where all of the elements of the general partnership are present, all of the incidents of the general partnership follow as matter of course. *Thompson v. Crystal Springs Bank, supra*. Also, where partners, by agreement, dispose of an essential characteristic of a mining partnership, their association will be deemed a general partnership. Rowley, *supra*.

■ Therefore, although a mining partnership can be proved as a matter of law by evidence of the aforementioned relationship between co-owners, without evidence of an intent on the part of those co-owners to become partners, *State v. Harrington, supra*, this is not to say that evidence of that relationship between co-owners, *when accompanied by* evidence of an intent on their part to act as general partners, will not support a finding that the co-owners were acting as general partners.

■ Here, the evidence shows that the parties *expressly agreed* to act as partners. No element of a general partnership is missing. Additionally, there was an agreement that the death of one of the parties, Joe A. Humphrey, would terminate the

partnership. We note that a classic characteristic of a mining partnership is that it is not dissolved upon the death of a partner. *Munsey v. Mills & Garitty, supra;* Summers, *supra* §§ 725 & 734. We hold that there was sufficient evidence to support the finding that the Humphrey Company was a general partnership.

### B.

Characterization of the partnership interest was complicated under Texas common law by the tension inherent in treating the partnership as an aggregate of partners acting as individuals pursuant to a contract, as opposed to treating the partnership as an entity legally distinct from its partners. Under the aggregate theory of partnership property, followed by Texas courts, a partnership was not capable of holding title to realty; title had to be in a partner. Bromberg, Source and Comments, 17 Tex.Rev.Civ.Stat.Ann. 300 & 321–22 (1970); Crane and Bromberg, Law of Partnership § 38 (1968). Under the entity theory of partnership property, adopted by the UPA, a partnership can hold title to real property. Tex.Rev.Civ.Stat.Ann. art. 6132b, § 8(3) (1970); Bromberg, *supra.*

Various inequities arose in applying the aggregate theory; the doctrine of equitable conversion was a judicial response. The doctrine provided that for certain purposes, title to real partnership property would be treated, in equity, as being in the partnership. The doctrine has been summarized as follows:

> A careful distinction must be drawn between the legal title and the equitable title. Wherever the legal title to partnership realty may rest, the equitable title is in the partnership. Under the doctrine of equitable conversion, the real estate may be treated as personalty so far as may be necessary for the payment of the debts of the partnership and the adjustment of equities between the partners. Such conversion of real estate into personalty is a device of equity to effectuate the settlement of partnerships, and to devote all of their property to payment

of firm debts. However, when the land is no longer needed for partnership purposes, it is relieved of the trust implied from the partnership relation, and all the ordinary incidents and qualities of real estate revive. The joint effects of a partnership, including realty, belong to the firm, and not to the partners, and a partner has no individual property in any specific assets of the firm, and no right during the existence of the partnership to the exclusive possession of any of its property. The interest of each partner in the partnership property is his share in the surplus after the partnership debts are paid, and after partnership accounts are settled and the rights of the partners inter se are adjusted.

[citations omitted]. *Miller v. Howell, supra.*

While a partner is living and the partnership is in existence, partnership realty is needed for partnership purposes; these purposes may include use as a place of business or sale to pay debts or to raise capital. It is perhaps for this reason that the Texas common law rule was that during the existence of the partnership a partner owns no title to any specific property belonging to the partnership, and that a partner's share in the partnership property is only his proportionate share of the surplus of the whole after payment of the partnership debts. *Oliphant v. Markham,* 15 S.W. 569 (Tex.1891); *Sherk v. First Nat. Bank,* 206 S.W. 507 (Tex.Comm.App.1918, judgmt. adopted); *Littleton v. Littleton,* 341 S.W.2d 484 (Tex.Civ.App.1960, writ ref'd n.r.e.); *Miller v. Howell, supra; Egan v. American State Bank,* 67 S.W.2d 1081 (Tex.Civ.App.1934, writ ref'd).

We think that the foregoing judicial language, providing that a partner's share in the partnership property is only his proportionate share of the surplus, is consistent with Section 26 of the UPA, which provides that "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property...." Therefore, if the focus of the inheritance tax computation is upon the nature of the

partnership interest held by a decedent *during life*, we think that it must be classified as intangible personalty regardless of whether the common law or the UPA is applied. *See* Bromberg, *supra* at 360.

▮ Instead of focusing upon the nature of the partnership interest owned by the partner during life, other jurisdictions, in computing the taxable estate, have focused upon the characterization of the interest in the partnership which passes under the probate laws. *Blodgett v. Silberman*, 277 U.S. 1, 48 S.Ct. 110, 72 L.Ed. 749 (1928); *Perkins v. Oklahoma Tax Commission*, 428 P.2d 328 (Okl.1967); *Lynch v. Kentucky Tax Commission*, 333 S.W.2d 257 (Ky.1960). In our opinion this is a better method of computing the taxable estate since the inheritance tax is imposed upon the right of succession and not upon the property. *Calvert v. Coke*, 458 S.W.2d 913 (Tex.1970). The taxable event is the "passing" that occurs upon the death of the property owner. *Id.*

Prior to adoption of the UPA, courts were divided regarding characterization of the partnership interest for descent and distribution purposes: two theories generally prevailed. *Williams v. Dovell*, 202 M.D. 351, 96 A.2d 484 (1953); *Cultra v. Cultra*, 221 S.W.2d 533 (Tenn.1949); *Wharf v. Wharf*, 306 Ill. 79, 137 N.E. 446 (1922); Annot., 80 A.L.R.2d 1107 (1961); Maltzman, *Characterization of Partnership Property Upon the Death of One of the Partners*, 16 U.Miami L.Rev. 92 (1961); Fletcher, *The Uniform Partnership Act*, 24 Yale L.J. 617 (1915). The English rule, followed by a minority of American states, provided that real estate which is treated as personalty for the purposes of a partnership remains personal property for the purpose of probate distribution; under this doctrine of out and out conversion the deceased partner's partnership interest passed to those entitled, under the law of descent and distribution, to take his personalty. *Wharf v. Wharf, supra.*

Under the prevailing theory of the American courts the real partnership property passed according to the statute of descent as real property. *Id.* It passed directly to those entitled to take the realty, subject to the equity of the surviving partner to have it appropriated to accomplish the trust to which it was primarily subjected; after the objects of conversion had been accomplished (settlement of partnership affairs), the property was reconverted to realty. *Williams v. Dovell, supra; Wharf v. Wharf, supra.* It appears that Texas courts have operated under this latter doctrine. *See Miller v. Howell, supra; Ramon v. Ramon*, 10 S.W.2d 584 (Tex.Civ. App.1928, writ ref'd).

The problem with the American rule was that where, as here, the partnership agreement provided for the continuation of the business after the death of one of the partners, it was not possible to ascertain whether the partnership real estate would be sold to pay partnership debts and/or to raise capital for the carrying on of the partnership business—the portion received by an heir was subject to the whim of the surviving partners. Fletcher, *supra.* It is now almost universally accepted that the effect of UPA adoption was to adopt the English rule of out and out conversion. Annot., 80 A.L.R.2d 1107 (1961); Crane and Bromberg, *supra* § 45; Maltzman, *supra;* Fletcher, *supra.* Texas has stressed adoption of the out and out conversion theory by adding the words "for all purposes" to the portion of the UPA which provides that the partnership interest is personalty. Tex.Rev.Civ.Stat.Ann. art. 6132b § 26 (1970); Bromberg, *supra* at 360; Crane and Bromberg, *supra* § 45 n. 91.

Since the UPA has changed Texas law regarding characterization of partnership realty for purposes of descent and distribution, the question arises as to whether application of the UPA under our facts would impair the partnership contract or affect any right accrued before the UPA took effect (and thereby violate Section 4(5) of the UPA). We hold that it would not.

Other jurisdictions have applied the Uniform Partnership Act to partnerships created prior to the passage of the act. *Zach v. Schulman*, 213 Ark. 122, 210 S.W.2d 124

(1948); *Wharf v. Wharf, supra; Crossman v. Gibney,* 160 N.W. 172 (Wis.1916). One court has held that although under the law existing at the time that the partnership was created partners owned partnership realty as tenants in common, the effect of subsequent UPA adoption was to convert that property into personalty. *Zach v. Schulman, supra.*

■ Under the Texas UPA, partnerships formed prior to adoption of the Act became subject to its provisions as regards matters not embodied in contract. Bromberg, *supra,* at 304. Texas courts have so applied it. *See Smoot v. Smoot,* 568 S.W.2d 177 (Tex.Civ.App.1978, no writ); *McKinney v. Nacogdoches Ind. School Dist.,* 489 S.W.2d 161 (Tex.Civ.App.1972), rev'd on other grounds, 504 S.W.2d 832 (Tex.1974); *Kelly v. Kelly,* 411 S.W.2d 953 (Tex.Civ.App.1967, writ ref'd n.r.e.).

■ The partnership agreement here involved does not declare the method by which the partnership property should descend upon death. We hold that the practical effect of Section 26 of the UPA was to indirectly alter the laws of descent and distribution: a partner's interest in partnership property, which had previously descended as realty, was by the Act's terms to be treated as personalty for all purposes, including descent and distribution.

■ Layton Humphrey did not die until after the UPA went into effect. A right to inherit does not vest until the death of the intestate. *Davis v. First Nat. Bank of Waco,* 139 Tex. 36, 161 S.W.2d 467 (1942). Also, rights acquired by will do not vest until the testator's death. *See* Tex. Prob.Code Ann. § 37 (Supp.1982); *Casey v. Kelly,* 185 S.W.2d 492 (Tex.Civ.App.1945, writ ref'd). Until the state of facts occur which under existing law would serve to vest a right, it is lawful for the law-making power to declare that such state of facts shall not fix it. *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898 (1955). We hold that the trial court did not err in applying the UPA and thereby characterizing Layton

Humphrey's partnership interest as intangible personalty.

## II.

■ Appellants also contend that the trial court erred in concluding that the payment of the additional tax did not result in double taxation on the estate. If we presume that the law of Oklahoma, Louisiana, Mississippi, and Wyoming is the same as that of Texas, then it would appear that those states improperly imposed an inheritance tax upon the Humphrey estate as regards an interest in intangible personalty. *See* 34 Tex.Admin.Code § 3.214(a)(1) (1981). Although appellants introduced some evidence that such states assessed an inheritance tax upon the partnership interest, another state's tax *assessment,* as opposed to a tax *judgment,* is not constitutionally entitled to full faith and credit. *Hamm v. Berrey,* 419 S.W.2d 401 (Tex.Civ. App.1967, writ ref'd n.r.e.). Additionally, two states may constitutionally impose an inheritance tax upon the same partnership interest. *Blodgett v. Silberman, supra.*

## III.

■ Appellants complain that the trial court erroneously found that at the time of his death Layton A. Humphrey, Sr. owned a 23.809% interest in the Humphrey Company. They point to an agreement whereby Mr. Humphrey's estate and the surviving partners allocated to themselves various percentages of ownership in the properties and assets of the Humphrey Company; according to that document the estate of Layton A. Humphrey owned a 23.809% interest in assets and properties obtained by the partnership during a certain period, but owned either a different percentage or no percentage in various other properties obtained at different times.

We note that in "Schedule S" of the Texas inheritance tax return, introduced into evidence by appellants, the representative of the estate lists Mr. Humphrey as owning a 23.809% interest in *the Humphrey Company.* In the inheritance tax returns of some of the other states here

relevant, also a part of the record, it was represented that Mr. Humphrey owned a 23.809% interest in properties of the Humphrey Company. At no place in such returns was partnership property segregated according to the time it was obtained, nor was Mr. Humphrey's interest therein computed accordingly. We hold that the information contained in these tax returns constitutes sufficient evidence to support the challenged finding of the trial court.

All of appellants' points of error are overruled; the trial court's judgment is affirmed.