In re Sheila Luftig KELLER, Debtor.

MEDICAL CENTER BANK, Plaintiff,

v.

Sheila Luftig KELLER and Daniel E. O'Connell, Trustee, Defendants.

Bankruptcy No. 84–02463–H2–4.
Adv. No. 84–0795–H3.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 26, 1986.

Susan E. Peters, Stokes and Peters, Houston, Tex., for Sheila Luftig Keller.

James Keenan, Bracewell and Patterson, Houston, Tex., for Medical Center Bank.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the complaint filed by Medical Center Bank, hereinafter referred to as Plaintiff, seeking to deny the discharge of the Debtor, as well as, alternative relief; answer filed by Sheila Luftig Keller (Robin), hereinafter referred to as Debtor; all parties being represented by their respective attorneys of record; on the presentation of proof, oral argument, and memoranda of law; and the Court having

heard and considered same, hereby finds as follows, to-wit:

## I.

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(H), (J) and (O).

## II.

This case essentially involves the validity of an intervivos trust established by the Debtor for her three minor children. The Plaintiff initially advances the proposition that no trust was ever legally created; and secondly, that if the trust was, in fact, effectuated, that it was designed to fraudulently protect or conceal assets actually owned by the Debtor. The Plaintiff further contends that there has been mismanagement of the trust assets during the course of administration, and that these assets should be made available to satisfy the claims of the Debtor's creditors. Because of this course of conduct, the Plaintiff seeks to deny the Debtor's discharge in bankruptcy. In the alternative, the Plaintiff requests this Court to order the trustee in this case, Daniel O'Connell, designated as a necessary party defendant, or a successor trustee, to investigate the administration of the trust. The Debtor, of course, takes the position that a valid trust arrangement was legally established, and denies any fraudulent purpose, intent, or conduct in the creation or administration of the trust.

## III.

To set this proceeding in a proper perspective, the following factual findings and conclusions of law are set forth:

The Debtor inherited certain properties, real and personal, from her first husband, David L. Luftig, who died, apparently testate in 1978. (The last will and testament of David L. Luftig was not introduced in evidence, although reference is made to same in the Rule 2004 examination of the Debtor. See examination transcript, Volume II, page 12.) The real properties were subsequently liquidated and the proceeds were converted to either negotiable instruments or banking accounts and designated as trust assets for the benefit of the Luftigs' three (3) children.

In 1979, the Debtor was contemplating marriage to Tom Keller, who ultimately became her second husband. Although she had informally taken steps to establish a trust for her children, as set forth hereinabove, the corpus being comprised of the inherited properties, after the marriage was solemnized, the Debtor initiated steps to formalize the trust arrangement. Admittedly, all the technical niceties of a duly constituted trust agreement were not always observed. However, the proof is convincing that a trust arrangement was intended and that legally all the basic requirements to establish a trust were met.

At inception, the corpus of the trust was largely comprised of investments in limited partnerships or joint ventures. Under Texas law, these interests would be considered personal property. See Vernon's Ann. Civ.St. art. 6132b, § 6(1), and art. 6132b, § 26. Also, see *Humphrey v. Bullock*, 666 S.W.2d 586 (Tex.App. 3 Dist.—1984).

Without contradiction, the Debtor advised all persons and/or entities involved in the limited partnerships and joint venture enterprises that she was establishing a trust for her children. (See Debtor's Exhibit 9, letter to partners, dated August 16, 1979.) There is also no serious dispute that the Debtor invested and reinvested all proceeds realized from the sales and turnover of properties, including the liquidated assets, into the trust corpus as instruments or accounts denominated as trust assets. Since no real property was vested in the trust corpus, in the opinion of this Court, a legitimate intervivos trust was created pursuant to Tex.Rev.Civ.Stat.Ann. art. 7425b–7 (No. 1), which provides as follows:

"An express trust may be created by one of the following means or methods:

A. A declaration in writing by the owner of property that he holds it as trustee

for another person, or persons, or for himself and another person or persons."

Also see *Kurtz v. Robinson,* 279 S.W.2d 949 (Tex.Civ.App.—1955), and *Fred Rizk Const. v. Cousins Mortg. and Equity,* 627 S.W.2d 753 (Tex.App.—1982).

All the basic elements of a valid trust were present as a result of the actions of the Debtor, i.e., the trust properties were clearly identified, the trustee was named, and the beneficiaries were designated. Clearly, the Debtor articulated the requisite intent to establish a trust for her children. See *Citizens Nat. Bank of Breckenridge v. Allen,* 575 S.W.2d 654 (Tex.Civ. App.—1978).

Introduced into evidence as Plaintiff's Exhibit 2, and Debtor's Exhibit 14, was the formalized trust agreement, dated August 1, 1979. This document admittedly was not executed on that date, but steps were initiated by the Debtor, as noted aforesaid, to have this agreement prepared shortly after her marriage in July, 1979, to Tom Keller. Through her second husband, she contacted his attorney, Walter W. Furlong, in Atlanta, Georgia, to reduce the trust arrangement to writing. For reasons that are not perfectly clear, the actual execution of the trust agreement was not completed until late, 1982. (See letter of Walter W. Furlong, dated December 20, 1982. Plaintiff's Exhibit 4.) Regardless of the delay, this Court finds that the earlier efforts of the Debtor had already firmly established a bona fide trust arrangement, albeit a revocable such arrangement.

On or about May 26, 1981, the Debtor, as president of United Carpet Distributors, Inc., executed and delivered to the Plaintiff a corporate promissory note in the principal amount of $400,000.00. The Debtor executed an individual guaranty agreement applicable to the promissory note, dated January 12, 1981. (No explanation was offered why the guaranty agreement pre-dated the promissory note.) The proceeds of this promissory note were to be utilized to restore the business of United Carpet Distributors, Inc., which had been destroyed by fire. The note was to be repaid from the fire insurance proceeds. The insurance company subsequently denied coverage, and refused to pay the policy proceeds. This issue was litigated unsuccessfully on at least two occasions by the Debtor. Consequently, there were and are no forthcoming insurance funds to repay the obligation to the Plaintiff. In 1983, the Plaintiff obtained a judgment in excess of $380,000.00, against the Debtor because of her execution of the individual guaranty of the unpaid corporate promissory note. Thereafter, the Debtor filed her Chapter 7 bankruptcy case on April 19, 1984.

IV.

In keeping with the factual findings outlined hereinabove, this Court is of the opinion that a valid trust was established by the Debtor. Having reached this conclusion, the Court now addresses the remaining issues raised by the Plaintiff.

On November 30, 1982, Jeffery Scott Luftig was appointed successor trustee to his mother and has continued to serve in said capacity since that time. The Plaintiff seeks to avoid the trust arrangement contending that the Debtor, as well as, Jeffery Luftig, have not properly managed the trust assets. As noted hereinabove, the Plaintiff also contends that the trust was designed for the fraudulent purposes of protecting and concealing assets actually owned by the Debtor. The Plaintiff has raised certain incidents of alleged misconduct in the creation and administration of the trust, all of which will be discussed hereinbelow.

■ The Plaintiff first advances the proposition that the trust was only an illusory trust because of the somewhat unlimited control exercised by the Debtor during her administration of the trust, as well as, because of the degree of control exercised by the Debtor over her son, Jeffery Luftig, as successor trustee. The Court notes the following language appearing in the trust agreement, to-wit:

".... However, the entire benefit of the trust shall be used by the Trustee for her

benefit and used until such time as any successor is designated or appointed; furthermore, the use of said trust contained in this sentence shall only inure to the initial Trustee."

Plaintiff's Exhibit 2, paragraph A, page 1.

This sentence clearly indicates that the Debtor was expressly permitted to exercise complete dominion over the trust assets until her son was appointed as successor trustee on November 30, 1982. This language is also explicit to the effect that a revocable trust was initially contemplated, which would thereafter shift into an irrevocable trust following the appointment of a successor trustee. The Debtor has countered the Plaintiff's argument by citing *Westerfield v. Huckaby*, 474 S.W.2d 189 (Tex.—1971), a case exclusively involving a revocable trust rather than an irrevocable trust. The Plaintiff argues that this distinction is significant. However, this Court is of the opinion that, insofar as the Plaintiff is postured in this case, that the revocable-irrevocable distinction is meaningless. If the Texas Supreme Court upheld the validity of the revocable trust in *Westerfield*, then certainly a more restrictive trust, such as that now before this Court, would be considered likewise valid.

■ The case of *Wilkerson v. McClary*, 647 S.W.2d 79 (Tex.App. 9 Dist.—1983), counters the Plaintiff's position that the Debtor should have transferred title to the various assets comprising the trust corpus into the official trust name. In fact, the Debtor did this on many occasions when assets were converted or liquidated, and subsequently deposited into trust instruments or accounts. The declaration of trust as to these assets is obvious.

■ The Plaintiff complains that the trust should not have expended assets to pay off a debt in the sum of $147,016.18, owed by the Debtor and secured by the residence occupied by the Debtor and her three children. The Plaintiff contends that the Debtor exercised undue influence over her son as the successor trustee when this transaction was consummated. However, the testimony was unequivocal that had this debt not been paid, the secured lender, University Savings Association, would have foreclosed its lien encumbering the residence. Thereafter, the Debtor and her children would have been literally "out in the street". Although the trust may hold under Texas law an invalid lien on the residential property because of the Debtor's homestead rights, the payment of the debt to University Savings Association to save the family house was the only prudent course of action to take. The Court finds no fraud in this conduct; nor does there appear to be any fraud in the sale of the corporate stock of Jester, Inc., which was formerly a trust asset, inasmuch as the net proceeds from the sale were deposited into a trust banking account.

## IV.

In summary, the Court finds that a legally valid revocable trust was established initially by the Debtor for the benefit of her three children, (subsequent to the death of her first husband, David L. Luftig), consisting principally of personal property assets. This existing revocable trust arrangement continued in effect, all of the basic elements of the trust being in existence, until late 1982, when the trust agreement was formally reduced to writing and executed. When Jeffery Scott Luftig was appointed as successor trustee on November 30, 1982, the trust became irrevocable as a result of the language appearing in the agreement. The Court recognizes that the Debtor obviously exercised a degree of influence over her son in his capacity as successor trustee; however, the evidence falls far short in proving that this was, in fact, undue influence or of such a nature as to constitute fraud. To the contrary, although the administration of the trust has not been perfect in every detail, there is simply no evidence to support the allegations of fraud or mismanagement of the trust assets. The course of conduct of the Debtor, insofar as her intentions of maintaining a trust arrangement, have been relatively consistent from the inception of the

trust in 1979 until the present time. Therefore, the Court finds no fraud proved against the Debtor and/or her son in the management of the trust by the requisite burden of proof and, as such, the Plaintiff's complaint must be dismissed with prejudice.

An Order will be entered consistent with this Opinion.